**Thomas PHILLIPS, Petitioner,**

v.

**S. Lamont SMITH, Warden, Georgia State Prison, Respondent.**

**Civ. A. No. 2398.**

United States District Court
S. D. Georgia,
Savannah Division.

June 4, 1969.

**132**

Thomas Phillips, pro se.

Arthur K. Bolton, Atty. Gen., William R. Childers, Asst. Atty. Gen., Atlanta, Ga., for respondent.

## ORDER

LAWRENCE, Chief Judge.

This is another habeas corpus case in which a State prisoner complains of deprivation of constitutional rights and no transcript of the proceedings at his arraignment and sentencing is available. The failure of many courts in Georgia to report stenographically what is said on such occasions is most unfortunate. Trouble and expense are poor answers. It is annoying to find the State constantly relying in these § 2241 cases upon the recollections of officials concerning what was said and done at sentencing proceedings that took place years before.

The prisoner here challenges the validity of three sentences imposed upon him on April 1, 1963 by the Judge of the Tallapoosa Circuit. Petitioner was accused in three accusations of the crime of armed robbery in Paulding County on February 4, 1963, being jointly charged with three other defendants of robbery "by the use of offensive weapons"—to wit, a .22 caliber and a .44 caliber pistol. Waiving formal arraignment and trial by jury, the defendant, who was then sixteen years of age, pleaded guilty to the charges, "with recommendation for life imprisonment," and received a life sentence on each.[1]

In April, 1968 Petitioner filed an application for writ of habeas corpus in Tattnall Superior Court contending that his pleas of guilty were entered without aid of counsel. Relief was denied by Judge Caswell.[2] Phillips then attempted to appeal to the Supreme Court of Georgia under the Habeas Corpus Act of 1967. Timely notice was filed with the Clerk of the Superior Court. The latter did not comply with the statute and failed to docket the appeal within fifteen days as required by law. (Ga.Laws, 1968, p. 385). No action has ever been taken by the Clerk on the attempted appeal.[3] I necessarily conclude that Petitioner's state remedies have been frustrated by the nonaction of the Clerk and that the prisoner has exhausted his remedies on the state level. This Court therefore has jurisdiction under Title 28 § 2241 of the United States Code.

In response to Petitioner's application for the writ Respondent moved for summary judgment based on the transcript of evidence in the habeas corpus proceeding in Tattnall Superior Court. The Attorney General contends that the ruling by Judge Caswell is dispositive of the same issues raised in the Federal Court.

---

1. A fourth accusation, to which Phillips also pleaded guilty, charged him with escaping jail. He was sentenced to 12 months imprisonment on that charge. A few days before the life sentences were imposed Petitioner was sentenced in the Superior Court of Cobb County, on pleas of guilty, to concurrent sentences for two burglaries, a robbery and an automobile theft charge. He has completed serving the Cobb County sentences.

2. In his findings of fact and law Judge Caswell adopted Respondent's version of the circumstances surrounding the guilty pleas and the defendant's waiver of the presence of counsel. He held that the prisoner had not overcome the presumption in favor of the validity of the sentences, citing Cobb v. Dutton, 222 Ga. 11, 148 S.E.2d 399 and Dutton v. Parker, 222 Ga. 532, 150 S.E.2d 833.

3. On April 26, 1969, in response to an inquiry by this Court, a letter was received from the Clerk of the Tattnall Superior Court indicating that there are presently thirty-seven notices of appeal in habeas corpus proceedings awaiting transmittal to the Supreme Court of Georgia, many of which have been pending for more than a year.

At a hearing before me on April 3, 1969 the motion for summary judgment was argued. An evidentiary hearing was also held. The entire record in the State habeas corpus case was put in evidence. The prisoner testified in the District Court, in part, as follows:

"A lot of what he said on that paper was not true. If I had a lawyer, I think his name is supposed to have been on that list somewhere. I asked for a lawyer. I asked for one but they didn't give me a lawyer. One day the Sheriff came down there to the jail and he asked if we had a lawyer and we told him no. So, the next day he carried us back to jail, after we broke jail, and he told us 'you all are going to court today.' I said: 'Are we going to Court' and he said, 'Yes,' and he handcuffed us and carried us to jail. I went in the court house handcuffed. He said I signed some papers. How can I sign papers when I have got handcuffs on my hands? * * * It was not a voluntary plea of guilt. Since we had escaped jail, the Solicitor, I have forgot his name, he told the Sheriff—there wasn't anybody in court but the sheriff, Solicitor and the Judge. He told the Solicitor 'if he don't plead guilty we should give him the chair.' If I had not been so young I would have got the chair."

The State's showing in the habeas corpus proceeding consisted of two depositions, one by the Solicitor General of the Tallapoosa Circuit and the other by the Sheriff of Paulding County. Hon. John T. Perren who as Assistant Solicitor General of that Circuit handled the matter in 1963 testified in part:

Q. From your memory and recollection, do you, would you say that the petitioner, or Thomas Phillips was a person of sound mind and intelligence and understands * * * the * * * consti* * * or any explanation of the proceedings that was explained to him at this entry of the plea?

A. Yes, sir. In my opinion he was.

\* \* \* \* \* \*

Q. Now, getting to the actual entry of the plea; at the time Thomas Phillips entered this plea of guilty, was he advised of the charges, was he appraised of the charges that was placed against him?

A. Yes, sir.

Q. One other thing, was he advised at that time that the entry of this plea that he had a right to counsel at that time to represent him, and that if he could not afford one, counsel then an attorney would be appointed for him?

A. Yes, sir, he was.

Q. After being advised of these rights, did he freely and voluntarily on his own volition enter this plea of guilty to these charges that were placed against him?

A. Yes, he was.

Similar testimony was elicited on deposition from the Sheriff of Paulding County who was present when Petitioner was sentenced in 1963.[4]

■■■ Considerable doubt exists as to whether I may properly receive these depositions. The prisoner was not present when they were taken. Before evidence in a state case can be considered in a federal habeas corpus proceeding it must be admissible in the district court. Townsend v. Sain, 372 U.S. 293, 315, 83 S.Ct. 745, 9 L.Ed.2d 770; United States ex rel. Taylor v. Reincke, D.C., 225 F.Supp. 985. Under Title 28 § 2246 depositions can be used in habeas corpus proceedings. Since there is no general code of procedure in such cases, the Federal Rules of Civil Procedure govern the taking of depositions in habeas corpus cases. Wilson v. Weigel, 9 Cir., 387 F.2d 632. Rule 26(d) provides that depositions "may be used against any party who was present or represented at the taking of the deposition

4. In McGarrah v. Dutton, 381 F.2d 161, 164, the Fifth Circuit commented on the unsatisfactoriness of conclusory interroga- tories and summary answers by a solicitor general.

or who had due notice thereof * * *." Where an adverse party is incarcerated and is not represented by counsel the notice to take a deposition is open to serious question.[5] Under § 2246 district judges possess discretion in the use of affidavits in habeas corpus applications. While lack of opportunity for cross-examination makes me reluctant to do so, I have decided to consider the depositions. I do this the more readily because the testimony of the Assistant Solicitor General seems important to Petitioner in a critical area. I note in passing that as between the depositions of the two State witnesses and the testimony of Petitioner I believe the former and disbelieve the latter. However, the matter at issue cannot be settled that simply.

According to Mr. Perren, when the four defendants came before the Court on March 11, 1963 all expressed a desire to enter pleas of guilty. Asked whether they had lawyers, the accused replied that "they had counsel and had consulted with their counsel and had been advised to go ahead and enter pleas of guilty * * *" Quite properly, the Court refused to accept the pleas. The Judge is quoted as saying, "If they were represented by counsel * * * they should have their counsel present * * *" He then advised the defendants to talk with their attorney again and have counsel present whenever they came back to enter pleas. Prior to their return for arraignment, the prisoners broke jail and were later apprehended. On April 1, 1963 Petitioner and the other defendants (two of whom were his older brothers) were brought into court and entered guilty pleas. According to Solicitor General Perren, they

> "still advised the court at the time they entered their pleas that they had had advice of counsel, that again they had been advised to plead guilty to the charges against them, and that they did not desire their counsel to be present, before the court offered the power

of the court to see that their counsel was present if they desired him to be present when their pleas were entered. And they stated to him that they had no desire that their counsel be present."

■ An indigent defendant in a criminal case is entitled to the assistance of an attorney. This right is guaranteed by the Fourteenth and the Sixth Amendments. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. The accused "requires the guiding hand of counsel at every step in the proceedings against him." Powell v. Alabama, 287 U.S. 45, at 68–69, 53 S.Ct. 55, at 64, 77 L.Ed. 158. Arraignment is a critical stage in a criminal case. The absence or lack of counsel at such time is a violation of the right of the accused to due process. Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193. In such cases courts "do not stop to determine whether prejudice resulted." Hamilton, supra, 368 U.S. 55, 82 S.Ct., p. 159. The sentencing of an accused is an equally critical stage. See Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336; McConnell v. United States, 5 Cir., 375 F.2d 905. Lack of counsel is a fatal defect unless cured by a showing that the defendant intelligently and voluntarily waived his right thereto. Worts v. Dutton, 5 Cir., 395 F.2d 341; Henderson v. Dutton, 5 Cir., 397 F.2d 375; Meadows v. Maxwell, 6 Cir., 371 F.2d 664. "Anything less is not waiver," Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70.

■ Where an accused had no counsel at the time of his conviction a heavy burden rests upon the State to prove an effective waiver. Wilson v. Wiman, 6 Cir., 386 F.2d 968. It must "substantiate a knowing waiver * * * by evidence which is not so deficient in form that there is doubt as to whether

5. In Miller v. Smith, 302 F.Supp. 385 (N.D.Ga., Dec. 24, 1968) Judge Smith held in a similar situation that the lack of opportunity for cross-examination of witnesses on deposition vitiated the State habeas corpus hearing.

the constitutional requirements have been observed." McGarrah v. Dutton, 381 F.2d 161, 165. There is a strong presumption against waiver of the constitutional right to counsel. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461. In the case of a seventeen-year-old boy an inference exists that the waiver was not intelligently made. Williams v. Huff, 79 U.S.App.D.C. 326, 146 F.2d 867.

▮ Where an accused is aware of his rights and voluntarily waives the presence of counsel and insists that the sentencing proceed although the Court suggested that it be postponed there is a valid waiver. Foster v. United States, 8 Cir., 359 F.2d 497 at 500.

In the present case, Mr. Perren testified that "all of these defendants said they did not desire their counsel to be present even though the presiding judge offered the power of the court to see that [he] was * * * if they desired * *."

▮ I strongly suspect that the counsel referred to by the defendants was more mythical than anonymous. Be that as it may, the Georgia court should have, in my opinion, gone further than it did in inquiring into the matter of waiver of counsel by a sixteen-year-old Negro, of small education and limited intelligence, accused of a capital crime. "A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309; United States ex rel. Ackerman v. Russell, 3 Cir., 388 F.2d 21; Spanbauer v. Burke, 7 Cir., 374 F.2d 67. In making such a determination "the judge before whom an accused appears without counsel is charged with a serious responsibility that cannot be perfunctorily performed." Mc-

Connell v. United States, 375 F.2d 905, 910. It is up to the trial judge to make "a clear record" of a "proper waiver" of counsel. Kaplan v. United States, 9 Cir., 375 F.2d 895, 898. In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (June 2, 1969) the Supreme Court in dealing with effective waiver of constitutional rights commented:

"What is at stake for an accused facing death or imprisonment demands utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence [citations], and forestalls the spin-off of collateral proceedings that seek to probe murky memories."

▮ The arraignment and sentencing in Petitioner's case should have been delayed until the counsel he claimed to have consulted was identified and came into court with the defendant. If counsel was merely a creature of imagination or misrepresentation there should have been a postponement until a lawyer was appointed for the accused. Life sentences should never be imposed in a routine manner. Meadows v. Maxwell, 371 F.2d 664. I am sure that the sentence in this case was not so imposed but the record falls far short of affirmatively showing a valid and effective waiver of Phillips' right to counsel.

The Respondent's motion for summary judgment is denied and the relief sought by Petitioner is granted. The three life sentences imposed in Paulding County Superior Court on April 1, 1963 are declared invalid and are to be vacated and set aside. Respondent may hold Petitioner for arraignment and trial on the capital charges at any time until completion of the next two regular criminal jury terms of that Court after the date of this order.